UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JESSE GARDNER,<br><br>    Plaintiff,<br><br>  v.<br><br>VESPRITE, LLC<br><br>    Defendant. | 1:25-cv-00182-JLT-EPG<br><br>ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO FILE A FIRST AMENDED COMPLAINT<br><br>(ECF No. 15) |

This civil action was removed from the Superior Court of California, County of Tulare on February 10, 2025, by Defendant Versprite, LLC. (ECF No. 1). Plaintiff Jesse Gardner alleges that Defendant terminated his employment in retaliation for being placed on short-term disability, in violation of the Fair Employment and Housing Act. Furthermore, Plaintiff claims he was harassed and Defendant failed to prevent this harassment, Defendant failed to provide required rest and meal periods, and Defendant failed to pay him overtime wages. (*Id.*, pp. 8-23).

On October 29, 2025, Plaintiff filed a motion to amend the Complaint. (ECF No. 15). Plaintiff seeks leave to amend to assert claims for "CFRA interference based on newly clarified evidence confirming Defendant decided to terminate Plaintiff *after* he notified the company of his need for medical leave." (ECF No. 15, p. 5) (emphasis added)

For the following reasons, the Court will grant Plaintiff leave to file a First Amended Complaint.

1

## I.   BACKGROUND

### a.   Complaint

Plaintiff filed his initial complaint on September 26, 2024, in the Superior Court of California, Tulare County. (ECF No. 1, p.2). Defendant timely removed the case to federal court on February 10, 2025. (ECF No. 1). Plaintiff named as defendants: Versprite, LLC. and DOES 1-50, Inclusive. (*Id.,* p. 8). Plaintiff alleges that, after being placed on short term disability in January 2024, Defendant Versprite terminated his employment. (*Id.,* p.14).

Plaintiff began remote employment as a Security/Threat Intelligence Consultant for Defendant on February 20, 2020. Plaintiff alleges that during his years of employment, he never received any negative performance reviews. (*Id.,* p. 11). Plaintiff alleges that he worked up to twelve hours a day and he averaged approximately 80 to 130 hours of work per week, with the expectation to be on call to respond to messages within fifteen minutes, regardless of the time or day of week. (*Id.*).

Plaintiff alleges that overtime wages were circumvented by being told to not report internal or work-related tasks that were not billed directly to Defendant's clients, and that Plaintiff's manager, Tony UcedaVelez, claimed Plaintiff was exempt from overtime because he was a salaried employee. (*Id.,* p. 13).

Plaintiff also alleges that he was berated and harassed by UcedaVelez. Further, Plaintiff claims that UcedaVelez refused to promote or give monetary raises to Plaintiff, even though Plaintiff had nine other managers who sought to promote Plaintiff. (*Id.*).

In early January 2024, Plaintiff was placed on short term disability because of a high risk of suffering a heart attack, due to what Plaintiff alleges was stress and over-work. Plaintiff's supervisor informed UcedeaVelez about the disability. (*Id,* p. 14). Plaintiff alleges that on or about January 12, 2024, Defendant locked Plaintiff out of his work account. Plaintiff claims he received no prior notice of termination and that he was terminated due to reorganization efforts within the company. (*Id.*).

\\\

\\\

      **b. Plaintiff's Motion to Amend**

On October 29, 2025, Plaintiff filed a motion to amend the complaint. (ECF No. 15). Plaintiff's proposed first amended complaint seeks to add claims for CFRA interference and CFRA retaliation under the California Family Rights Act (CFRA) and "clarifies the termination timeline based on newly obtained discovery." (*Id.*, p. 2). Plaintiff alleges that Defendant's recent verified responses to Plaintiff's Interrogatories, Set Two, indicate that the decision to terminate Plaintiff occurred four days after Plaintiff's notice of his medical leave was reported to his supervisor on January 8, 2024. (*Id.*). Specifically, Plaintiff provides the following interrogatory and response:

> **INTERROGATORY N0. 14:** IDENTIFY the DATE on which YOU made the decision to TERMINATE PLAINTIFF's employment, and IDENTIFY all PERSON(S) who participated in, consulted on, or approved that decision.

Defendants provided the following

> **RESPONSE TO INTERROGATORY NO. 14:** Objection. This interrogatory is not reasonably calculated to lead to the discovery of admissible evidence. Vague and ambiguous. Overbroad and burdensome. Without waiving the foregoing objections, responding party states as follows: Responding party has long planned the process of reshaping the Threat Intel Group. Some employees were offered new roles within the group depending on their skills, and other were terminated if they were not aligned to the level of quality the company was looking to build in one of the three subdivisions of the Threat lntel Group. Those thress [sic[ divisions were Engineering (development background required), Consulting (a new level of consulting quality was imperative, predominantly in the communication. The last group was the SOC and although Plaintiff had been a part of the SOC, peer feedback had revealed that his work had been problematic and fulls [sic]of errors. Plaintiff had problems with his written oral communications and there had been numerous issues with the quality of his writing. Responding party lost two clients because of poor work by the Plaintiff. The final decision was made on January 12, 2024.

Plaintiff claims this response contradicts Defendant's earlier responses to Plaintiff's Interrogatories, Set One, made on June 24, 2025, which indicated the decision to terminate Plaintiff occurred prior to Plaintiff's notice of leave. (*Id.*). Specifically, Defendant was asked in Interrogatories No. 2 and No.3:

> **INTERROGATORY NO. 2:** DESCRIBE all reasons why PLAINTIFF'S employment was terminated and IDENTIFY all DOCUMENTS that support YOUR stated reasons.

**INTERROGATORY NO. 3:** DESCRIBE the restricting or reorganization within the Threat Intelligence Group that allegedly led to PLAINTIFF'S TERMINATION, including any specific changes in roles, hierarchy, or job descriptions.

(ECF No. 15-1, pp.62-63).

Defendant responded

**RESPONSE INTERROGATORY NO. 2:** Objection. This interrogatory is not reasonably calculated to lead to discovery of admissible evidence. Vague and ambiguous. Overbroad and burdensome. Without waiving the foregoing objections, responding party states as follows: Responding party has long planned the process of reshaping the Threat Intel Group. Some employees were offered new roles within the group depending on their skills, and other were terminated if they were not aligned to the level of quality the company was looking to build in one of the three subdivisions of the Threat Intel Group. Those thress [sic] divisions were Engineering (development background required), Consulting (a new level of consulting quality was imperative, predominantly in the communication. The last group was the SOC and although Plaintiff had been a party of the SOC, peer feedback had revealed that his work had been problematic and fulls [sic] of errors. Plaintiff had problems with his written oral communications and there had been numerous issues with the quality of his writing. Responding party lost two clients because of poor work by the Plaintiff.

**RESPONSE TO INTERROGATORY NO. 3:** Objection. This interrogatory is not reasonably calculated to lead to discovery of admissible evidence. Vague and ambiguous. Overbroad and brudensome [sic]. Without waiving the foregoing objections, responding party states as follows: See Response to Interrogatory Number 2. One group became formally divided into 3 subgroups. Decisions on who to place in each subgroup came from speaking with peers from within the group, being aware of client satisfaction issues. The three subgroups were SOC, Consulting and Engineering.

(ECF No. 15-1, pp. 62-63).

Finally, Plaintiff alleges that Defendant failed to provide Plaintiff with "the required CFRA eligibility, rights-and-responsibilities, or designation notices upon learning of potential CFRA-qualifying need for leave." (*Id.*).

### c. Defendant's Opposition

On November 17, 2025, Defendant filed an opposition to Plaintiff's motion to amend the complaint. (ECF No. 20). Defendant argues that elimination of Plaintiff's position was under consideration for a period of time and the final decision was made on January 12, 2024. (*Id.*). Moreover, Defendant argues the allegations of the original complaint are substantially the same, stating:

> The original complaint alleges that his doctor placed Plaintiff on a medical leave of absence on January 8, 2024, and that he was terminated on January 12, 2024. Plaintiff thereby implies that the temporal proximity of the termination to Plaintiff being placed

on a medical leave of absence was a factor in Plaintiff's termination. These facts alone should have clued the Plaintiff in to his rights under the CFRA. Based on the foregoing, the basic facts relied on by Plaintiff have not changed.

(*Id.*)

Additionally, Defendant argues Plaintiff's proposed amendment is futile because Plaintiff did not notify Defendant in writing of the requested leave of absence recommended by Plaintiff's doctor. (*Id.*, pp. 3-4).

Finally, Defendant claims that written discovery has already been conducted regarding Plaintiff's claims and Defendant is in the process of scheduling Plaintiff's deposition. (*Id.,* p. 4). Defendant would not have sufficient time to conduct additional written discovery prior to Plaintiff's deposition and the upcoming discovery cut-off. (*Id.*).

### d. Plaintiff's Reply

Plaintiff filed a reply to Defendant's opposition on November 26, 2025. (ECF No. 23). Plaintiff argues that Defendant would not be prejudiced due to additional written discovery related to the new CFRA claims because discovery does not close until February 6, 2026, and Defendant can either notice Plaintiff's deposition toward the end of the deadline or request a continuance of discovery deadlines limited solely to CFRA issues. (*Id.,* p. 2).

Plaintiff also argues that his motion is not untimely because he moved to amend the complaint "within weeks of learning new dispositive information."

Finally, Plaintiff argues Defendant's futility argument that Plaintiff did not properly notify Defendant of his medical leave in writing is contrary to the law. (*Id.,* p. 7). Plaintiff states that CFRA does not require written notice and Defendant's alleged failure to provide Plaintiff any notice of his CFRA rights defeats the argument that Plaintiff failed to provide reasonable notice of his intent to take CFRA leave. (*Id.*).

## II.   LEGAL STANDARD

Under Rule 15(a), a party may amend a pleading once as a matter of course within twenty-one days of service, or if the pleading is one to which a response is required, twenty-one days after service of a motion under Rule 12(b), (e), or (f). Fed. R. Civ. P. 15(a)(1)(B). "In all other cases, a party may amend its pleading only with the opposing party's written consent or

the court's leave." Fed. R. Civ. P. 15(a)(2).

Granting or denying leave to amend is in the discretion of the Court. *Swanson v. United States Forest Service*, 87 F.3d 339, 343 (9th Cir. 1996). "In exercising this discretion, a court must be guided by the underlying purpose of Rule 15 to facilitate decision on the merits, rather than on the pleadings or technicalities." *United States v. Webb*, 655 F.2d 977, 979 (9th Cir. 1981). "Five factors are taken into account to assess the propriety of a motion for leave to amend: bad faith, undue delay, prejudice to the opposing party, futility of the amendment, and whether the plaintiff has previously amended the complaint." *Desertrain v. City of Los Angeles,* 754 F.3d 1147, 1154 (9th Cir. 2014) (citation omitted); *see also Eminence Cap., LLC v. Aspeon, Inc.,* 316 F.3d 1048, 1052 (9th Cir. 2003) ("Prejudice is the 'touchstone of the inquiry under rule 15(a).'") (citation omitted).

"Although leave to amend 'shall be freely given when justice so requires,' Fed.R.Civ.P. 15(a), it 'is not to be granted automatically.'" *Zivkovic v. S. California Edison Co.*, 302 F.3d 1080, 1087 (9th Cir. 2002) (citations omitted). "Leave to amend may be denied if the proposed amendment is futile or would be subject to dismissal." *Wheeler v. City of Santa Clara*, 894 F.3d 1046, 1059 (9th Cir. 2018).

### III. ANALYSIS

The Court examines the factors relevant to whether to grant leave to amend, specifically bad faith, undue delay, prejudice to the opposing party, futility of the amendment, and whether the plaintiff has previously amended the complaint.

As an initial matter, the Court finds no evidence of bad faith or undue delay by the Plaintiff. Plaintiff was only recently provided the information that clarifies the timeline for his termination. In Interrogatories, Set One, which responses were provided on June 24, 2025, Defendant indicated that the decision to terminate Plaintiff occurred due to Defendant's reorganization and restructuring, without providing a date for that decision. However, in response to Interrogatories Set Two, provided on October 7, 2025, Defendant provided a date for that decision, which is after Plaintiff requested medical leave. Shortly thereafter, on October 29, 2025, Plaintiff moved to amend the complaint.

Regarding prejudice to the opposing party, the Court finds that Defendant will have sufficient time to conduct any further discovery by the February 6, 2026, deadline. Alternatively, Defendant may seek a continuance of the existing discovery deadline for the limited purpose of conducting discovery regarding the amended claims. Moreover, Defendant fails to specify any additional discovery needed for this claim as the underlying facts related to this claim appear to already be subject to discovery.

Regarding futility, Defendant argues that Plaintiff "did not properly notify Defendant" because he failed to submit a written formal request to his supervisor and as such, fails to state a cause of action for violation of the CFRA. (ECF No. 20, p.3). However, as Plaintiff argues, written notice is not a requirement of CFRA. (ECF No. 23, p. 7); Cal. Code Regs. tit. 2, § 11091(a)(1); *Sora. V. Univision Radio L.A., Inc*., 5 Cal. App. 5th 570, 602-603 (2016). Specifically, verbal notification is sufficient.

> The regulation adopted by the Commission provides, in part, to request CFRA leave an employee "shall provide at least verbal notice sufficient to make the employer aware that the employee needs CFRA leave, and the anticipated timing and duration of the leave."

*Sora*, Cal. App. 5th at 602; *see also* Cal. Code Regs., tit.2, 11091.  Although there may be a factual dispute about the sufficiency of the notice, it does not appear that this claim is futile.

After consideration, the Court finds that Plaintiff is entitled to file the proposed amended complaint.

## IV. CONCLUSION

For the foregoing reasons,

1. The Court GRANTS Plaintiff's motion to amend the complaint, (ECF No. 15);
2. Plaintiff shall file the second amended complaint on the docket no later than January 5, 2026.

IT IS SO ORDERED.

Dated:   **December 23, 2025**        /s/ Erica P. Grosjean
                                      UNITED STATES MAGISTRATE JUDGE